**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | |
|---|---|
| **DREW BARRY McLENDON,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | )     Case No. 3:21-cv-359-RAH-CWB |
| | ) |
| **SGT. WILSON, et al.,** | ) |
| | ) |
|     **Defendants.** | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.     Introduction**

Drew Barry McLendon, an indigent state inmate, filed this action to assert claims under 42 U.S.C. § 1983—alleging denials of access to the courts and to the jail grievance procedure while housed at the Lee County Detention Center. (*See* Doc. 1). Named as defendants are Sgt. Jessica Wilson, Sgt. Rodney D. Tabb, and the Lee County Detention Center itself. (*Id*.). McLendon seeks monetary damages and both declaratory and injunctive relief in the form of an order requiring defendants "to cease and desist in this irrational, illegal, and evil targeting and discriminatory behavior." (*Id.* at p. 5).

The defendants in turn filed a special report that included various evidentiary materials. (*See* Doc. 20 through Doc. 20-16). After reviewing the defendants' submission, the court directed McLendon to file a response supported by affidavits/statements made under penalty of perjury and/or other evidentiary materials. (*See* Doc. 23). Plaintiff subsequently complied with that directive. (*See* Doc. 33).

The parties previously were given notice that "the Court may at any time [after expiration of the time for McLendon to file a response] and without further notice to the parties (1) treat the Written Reports with supplement and any supporting evidentiary materials as a motion to dismiss or motion for summary judgment, whichever is proper, and (2) rule on the dispositive motion, in accordance with the law, after considering any response filed in compliance with this Order." (Doc. 23 at pp. 2-3). Pursuant to that disclosure, the undersigned will now treat the defendants' special report and exhibits as having presented arguments for summary judgment and will recommend that summary judgment be granted in favor of the defendants on all claims.

## II.   Summary Judgment Standard

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). A dispute "is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party … . [A fact] is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (citation omitted).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for the motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). That responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact. *Id*. Alternatively, a movant who does not have a trial burden of production can simply assert that the nonmoving party "cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B); *see also* Fed. R. Civ. P. 56 advisory committee's note ("Subdivision (c)(1)(B) recognizes that a party need not always point to specific record materials. … [A] party who does not have the trial burden of production may

rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact."). Under either scenario, the burden then shifts to the nonmoving party to establish that a genuine dispute of material fact exists as to each element of the underlying claims. *See Celotex Corp.*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c)(1)(A).

To establish a genuine dispute of material fact, the nonmoving party must produce such evidence as would be sufficient for a reasonable trier of fact to return a verdict in its favor. *See Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001). When evaluating whether a genuine dispute of material fact exists, the court must view all of the evidence in a light most favorable to the nonmovant and draw all justifiable inferences from the evidence in the nonmovant's favor. *See McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *see also* Fed. R. Civ. P. 56(a). Nonetheless, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III.   Facts

McLendon's first contention is that a May 9, 2021 commissary order was cancelled without disciplinary cause. (*See* Doc. 1 at p. 3). According to McLendon, the order had been placed by kiosk and included a writing pad and ink pen needed for legal purposes. (*Id.*). McLendon asserts that cancellation of the order was consistent with prior interference by jail officials aimed at hampering the ability to communicate with counsel—ultimately preventing the filing of a motion for new counsel and resulting in an ongoing representation by inadequate counsel. (*Id.* at pp. 3-4; Doc. 33 at pp. 2-3).

McLendon next contends that an associated grievance could not be filed due to previously having reached the maximum number grievances allowed to be submitted on the jail kiosk. (Doc. 1 at p. 5; Doc. 33 at pp. 3-5). McLendon asserts that no alternate option of submitting a grievance in paper form was offered. (Doc. 33 at p. 12).

## IV. Discussion

### A. Claims against the Lee County Detention Center

Capacity to sue or be sued is determined by the law of the state in which the district court sits. *See Dean v. Barber*, 951 F.2d 1210, 1215 (11th Cir. 1992) (citing Fed. R. Civ. P. 17(b)). It consistently has been held that a sheriff's department is not subject to suit under Alabama law and that county jails fall into the same category. *See Holifield v. City of Mobile Municipal Court of Mobile, Ala.*, No. 07-0309-CG-B, 2009 WL 793516, *2 (S.D. Ala. Mar. 19, 2009) ("Because an Alabama sheriff's department lacks the capacity to be sued, then, it follows that the jail likewise lacks the capacity to be sued."); *Alexander v. Houston County Jail*, No. 1:20-cv-30-ALB, 2020 WL 762281, *1 (M.D. Ala. Jan. 17, 2020) ("[A] a county jail is not a viable defendant under Section 1983.") (quoting *Bell v. Brown*, No. 6:17-cv-12, 2017 WL 3473845, *5 (S.D. Ga. Aug. 11, 2017) (citing *Grech v. Clayton County*, 335 F.3d 1326, 1343 (11th Cir. 2003)); *Linares v. Etowah County Jail*, No. 4:14-cv-1364-RDP-SGC, 2015 WL 1643381, *1 n.1 (N.D. Ala. Apr. 13, 2015) ("Etowah County Jail … is not a legal entity capable of being sued under § 1983."); *see also Ex parte Dixon*, 55 So. 3d 1171, 1172 n.1 (Ala. 2010) ("Generally, the departments and subordinate entities of municipalities, counties, and towns that are not separate legal entities or bodies do not have the capacity to sue or be sued in the absence of specific statutory authority.").

### B. Official capacity claims

Official capacity suits are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). As such, a state employee may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996). And with respect to the type of claims now being asserted by McLendon, it has been recognized that "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abrogated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citation omitted). Accordingly, Sgt. Wilson and Sgt. Tabb are protected by sovereign immunity from any claims for monetary damages being asserted against them in their official capacities. *See, e.g., Selensky v. Alabama*, 619 F. App'x 846, 849 (11th Cir. 2015) ("[T]he Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]."); *Turquitt v. Jefferson County, Ala.*, 137 F.3d 1285, 1289 (11th Cir.1998) ("[T]he sheriff has control over … employees of the jail" and, "in operating the jails, sheriffs are subject to control by state agencies, not by counties."); *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997) ("[W]e agree with the district court that Alabama jailers are entitled to Eleventh Amendment immunity when sued in their official capacities."). Not only that, "states and state officials acting in their official capacities are not 'persons' subject to liability under 42 U.S.C. § 1983." *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 n.3 (11th Cir. 1990) (citing *Will v. Michigan Dep't of State Police,* 491 U.S. 58 (1989)).

### C. Individual capacity claims

#### i. Cancellation of commissary order

It has been recognized that "the Constitution does not grant an inmate a right to visitation, store, and telephone privileges." *Warren v. Perkins,* No. 2:08-522-KD-C, 2009 WL 2882139, *6 (S.D. Ala. Sept. 1, 2009) (citing *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 460 (1989)); *see also Walker v. Loman,* No. 2:06-cv-896-WKW, 2006 WL 3327663, *3 (M.D. Ala. Nov. 15, 2006) (holding that 90-day loss of store, telephone, and visitation privileges did not result in deprivation of a liberty interest). McLendon therefore cannot predicate a § 1983 claim upon the denial of commissary privileges vis-à-vis a cancellation of the May 9, 2011 order.

#### ii. Access to the courts

The United States Supreme Court has held that inmates have a right of access to the courts. *See Wolff v. McDonnell,* 418 U.S. 539, 579 (1974). Constitutional access has been defined as "the opportunity to prepare, serve and file whatever pleadings or other documents are necessary or appropriate in order to commence or prosecute court proceedings affecting one's personal liberty, or to assert and sustain a defense therein, and to send and receive communications to and from judges, courts and lawyers concerning such matters." *Hatfield v. Bailleaux,* 290 F. 2d 632, 637 (9th Cir. 1961). The United States Supreme Court further has been clear that "actual injury" is a prerequisite to an access claim. *Al-Amin v. Smith,* 511 F. 3d 1317, 1332 (11th Cir. 2008) (citing *Lewis v. Casey,* 518 U.S. 343, 349 (1996)). In order to show the necessary actual injury, an inmate "must provide evidence of some deterrence, such as a denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of the prison officials." *Al-Amin,* 511 F. 3d at 1332 (citation omitted). An inmate thus should allege "how any legal matters specifically were damaged." *Id.* at 1333.

6

There is no evidence that a lack of supplies had any non-speculative, detrimental impact on McLendon's legal rights or remedies—such as causing missed deadlines, dismissals, waivers, etc. Moreover, to the extent McLendon is asserting that the outcome of the underlying criminal case would have been different had supplies been provided, recourse would lie through habeas corpus proceedings rather than under § 1983. *See Heck v. Humphrey*, 512 U.S. 411, 481 (1994).

### iii. Grievance procedure

It is widely recognized that "an inmate grievance procedure is not constitutionally required." *Spencer v. Moore*, 638 F. Supp. 315 (E.D. Mo. 1986) (citations omitted); *see also Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) ("[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates."). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment." *Buckley*, 997 F.2d at 495 (quotation marks and citation omitted); *see also Bingham v. Thomas*, 654 F.3d 1171, 1177-78 (11th Cir. 2011) ("[A] prison grievance procedure does not provide an inmate with a constitutionally protected interest."); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (per curiam) (holding that federal prison administrative remedy procedures "do not in and of themselves create a liberty interest in access to that procedure" and that "the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance."); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) ("There is no legitimate claim of entitlement to a grievance procedure."). *Accord Doe v. Moore*, 410 F.3d 1337, 1350 (11th Cir. 2005) (finding "[s]tate-created procedural rights that do not guarantee a particular substantive outcome are not protected by the

Fourteenth Amendment, even where such procedural rights are mandatory") (citation and internal quotation marks omitted).

### iv.   Qualified immunity

Qualified immunity offers complete protection from civil damages for government officials sued in their individual capacities if the underlying conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  To receive qualified immunity, a defendant first must prove that he or she was acting within the scope of discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).  The record here is undisputed that Sgt. Wilson and Sgt. Tabb both were acting within the course and scope of their discretionary authority. The burden therefore shifts to McLendon to present evidence that: (1) a constitutional violation was committed; and (2) the affected constitutional right was "clearly established."  *Id.*; *see also Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004).  "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right. ...  In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citations and internal quotation marks omitted) (alteration in original); *Storck v. City of Coral Springs*, 354 F.3d 1307, 1318 (11th Cir. 2003) (citation omitted) ("Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit.").  Because none of the alleged conduct in this case meets that standard, an extension of qualified immunity to Sgt. Wilson and Sgt. Tabb would be appropriate.

### D. Claims for declaratory and injunctive relief

Under Eleventh Circuit precedent, "a transfer or a release of a prisoner from prison will moot that prisoner's claims for injunctive and declaratory relief." *Smith v. Allen,* 502 F. 3d 1255, 1267 (11th Cir. 2007), *abrogated on other grounds by Sossamon v. Texas,* 563 U.S. 277 (2011); *see also Zatler v. Wainwright,* 802 F. 2d 397, 399 (11th Cir. 1986) (per curiam). Because McLendon is no longer incarcerated at the Lee County Detention Center (*see* Doc. 34), all of the pending claims for injunctive and declaratory relief have been rendered moot.

## V. Conclusion

For the above-stated reasons, the Magistrate Judge **RECOMMENDS** that the construed motion for summary judgment (Doc. 20) be granted such that summary judgment is entered in favor of the defendants on all claims.

It is **ORDERED** that all objections to this Recommendation must be filed no later than **September 17, 2024**. An objecting party must identify the specific portion(s) of factual findings/ legal conclusions to which objection is made and must describe in detail the basis for each objection. An objecting party also must identify any claim or defense that the Recommendation has not addressed. Frivolous, conclusive, or general objections will not be considered.

After receiving objections, the District Judge will conduct a *de novo* review of the findings or recommendations to which objection is made. The District Judge may accept, reject, or modify the Recommendation or may refer the matter back to the Magistrate Judge with instructions for further proceedings. *See* 28 U.S.C. § 636(b)(1)(C). A party shall be deemed to have waived the right to challenge on appeal a District Judge's order to the extent it is based upon unobjected-to findings or recommendations. The court on appeal may review unobjected-to factual and legal conclusions only for plain error if necessary in the interests of justice. *See* 11th Cir. R. 3-1.

No party may appeal this Recommendation directly to the United States Court of Appeals for the Eleventh Circuit. An appeal may be filed only as to an appealable order entered by the District Judge.

**DONE** this the 3rd day of September 2024.

                                            **CHAD W. BRYAN**
                                            **UNITED STATES MAGISTRATE JUDGE**